NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

DAVID K. LEGAR, *Petitioner/Appellee*,

*v.*

YEON HEE PARK, *Respondent/Appellant*.

No. 1 CA-CV 25-0790 FC

FILED 07-07-2026

Appeal from the Superior Court in Maricopa County
No.  FC2024-001304
The Honorable Melissa Zabor, Judge

**VACATED AND REMANDED**

COUNSEL

Royer Law Office PC, Phoenix
By Kenneth G. Royer
*Counsel for Petitioner/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Angela K. Paton joined.

_____

**C A T L E T T**, Judge:

¶1 Yeon Hee Park ("Wife") appeals the superior court's decree ("Decree") dissolving her marriage to David K. LeGar ("Husband"). Wife argues the superior court erred in calculating her income, refusing to retroactively modify its temporary spousal maintenance and child support orders, awarding a community asset to Husband with no offset, and awarding attorney fees to Husband. Because the superior court erred in several respects, we vacate the Decree and remand.

## FACTS AND PROCEDURAL BACKGROUND

¶2 The parties married in 2004 and have one child, born in 2013. In March 2024, Husband petitioned to dissolve the marriage.

¶3 Husband then requested temporary child support and spousal maintenance orders. Following a hearing, the superior court found that Wife's income was $20,000 a month and Husband's was $5,000 a month. The court used a mortgage principal amount of $3,000 a month in the spousal maintenance worksheet. The court ordered Wife to pay Husband $274 a month for temporary child support and $4,500 a month for temporary spousal maintenance. In its temporary orders, the court acknowledged that "a temporary order is always subject to reassessment," that temporary orders are "based on the limited evidence presented in an abbreviated hearing," and that "additional evidence" may change its rulings.

¶4 The trial took place nearly a year later. Beforehand, Wife requested that the court make written findings of fact and conclusions of law as to spousal maintenance, division of property, and attorney fees. *See* Ariz. R. Fam. Law P. 82(a).

¶5 In the Decree, the superior court found Wife's income was $16,666 a month ($200,000 annually). The court found Husband's income was $5,000 a month, but Husband could increase that amount to $7,500 a month within 18 months. The court again found the mortgage principal

was $3,000 a month. It then used those income and mortgage amounts to calculate spousal maintenance and child support. Based on those figures, the court ordered Wife to pay Husband spousal maintenance of $3,750 a month for the first 18 months and $2,750 a month for the next 18 months.

¶6         The court declined to reassess its temporary orders, reasoning that the "parties had an opportunity to present evidence at the temporary orders hearing, and the Court will not allow the parties to have multiple opportunities to relitigate the same issues."

¶7         During the marriage, the parties and Husband's parents bought a condo as an investment property. Wife later signed a warranty deed assigning her interest in the condo to Husband and his parents, but the superior court found she did not intend to gift her share of the community's interest by doing so. Rather, she did so to qualify for a mortgage on the marital residence. That finding is not disputed on appeal.

¶8         Nevertheless, the court found the condo was Husband's separate property. The court found Wife did not present evidence that the condo was community in nature, nor that the community had an equitable interest in it. So the court awarded the condo to Husband as separate property without any offset.

¶9         Lastly, the court awarded Husband $7,500 in attorney fees for two reasons. First, because there was a substantial disparity in the parties' financial resources. Second, Wife took unreasonable positions during the litigation, including by requesting "half of [Husband's] parents' condo price."

¶10         Wife moved to alter or amend the Decree, arguing the court erred in calculating her income, in awarding the condo to Husband with no offset, and in refusing to reconsider its temporary orders. Wife also argued that, despite her Rule 82 request, the Decree contained insufficient findings of fact and conclusions of law. The court acknowledged it had not filed a spousal maintenance worksheet but otherwise denied the motion because it had "made its findings, consistent with the evidence and testimony presented at trial, as is within its broad discretion to do."

¶11         Wife timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1); Ariz. R. Fam. L.P. 78(c).

**DISCUSSION**

¶12 Wife argues the superior court erred in five ways. One, by miscalculating her income for spousal maintenance and child support. Two, by using an incorrect mortgage principal amount to calculate spousal maintenance. Three, by refusing to retroactively modify its temporary orders. Four, by failing to equitably divide the condo jointly owned by the parties and non-parties. And five, by awarding Husband attorney fees. We address Wife's arguments in that order.

¶13 Wife's reply brief points out that Husband's answering brief contains insufficient legal and record citations. Just last year, Husband's counsel filed an opening brief with similar deficiencies, causing this court to deem the client's argument abandoned and waived. *See In re Marriage of Palmerin and Palmerin*, 2025 WL 1026261 at *1 ¶ 3 (App. 2025) (mem. decision) (failing to provide a transcript of the relevant proceeding, cite legal authority, or develop legal arguments waived appellant's arguments). True, answering briefs have fewer requirements than opening briefs, but they must cite relevant legal authority and the record. Ariz. R. Civ. App. P. 13(a)(7), (b)(1). Although we do not deem Husband to have waived the arguments in his answering brief due to its deficiencies, we admonish counsel to review Arizona Rule of Civil Appellate Procedure 13 and ensure all future briefs comply.

## I. Spousal Maintenance and Child Support

¶14 Wife argues the court erred twice when calculating spousal maintenance and child support. First, by miscalculating her income. And second, by using an erroneous mortgage principal amount.

¶15 We review spousal maintenance and child support awards for abuse of discretion. *Leathers v. Leathers*, 216 Ariz. 374, 376 ¶ 9 (2007) (spousal support); *Nash v. Nash*, 232 Ariz. 473, 476 ¶ 5 (App. 2013) (child support). An abuse of discretion includes a legal error. *Huey v. Huey*, 253 Ariz. 560, 562 ¶ 6 (App. 2022). Spousal maintenance and child support amounts are determined by the Arizona Spousal Maintenance Guidelines ("Spousal Guidelines") and the Arizona Child Support Guidelines ("Child Guidelines") (together, the "Guidelines"), unless the court finds in writing that applying them would be "inappropriate or unjust."[1] A.R.S. §§ 25-

---

[1] The supreme court amended the Spousal Maintenance Guidelines effective September 1, 2025. *See* A.R.S. § 25-319, Appx., Credits; Admin.

319(B) (spousal support) (2022); -320(D) (child support).  We review the superior court's interpretation and application of the Guidelines and relevant statutory factors de novo—those are legal questions.  *Mead v. Holzmann*, 198 Ariz. 219, 220 ¶ 4 (App. 2000).

### A.    Wife's Income

**¶16**        Wife maintains the superior court miscalculated spousal maintenance and child support both by omitting certain costs and deductions in its calculations and by inflating her income with cash transfers.  She also argues the court made insufficient findings under Rule 82 to explain how the court arrived at its conclusions.  Husband argues substantial evidence supports the court's decision and the court sufficiently explained itself.

**¶17**        When a party timely requests findings of fact and conclusions of law, the court "must make separate findings of fact and conclusions of law."  Ariz. R. Fam. L.P. 82(a).  Those findings must be "clear" enough so that we need not infer from the record how the superior court "arrived at its mathematical figure."  *Stein v. Stein*, 238 Ariz. 548, 551 ¶ 12 (App. 2015); *see also Kelsey v. Kelsey*, 186 Ariz. 49, 50–51 (App. 1996) (applying same principle to Arizona Rule of Civil Procedure 52(a)).  Satisfactory findings "encompass all of the 'ultimate' facts—that is, those necessary to resolve the disputed issues[.]"  *Elliot v. Elliot*, 165 Ariz. 128, 132 (App. 1990) (citation omitted).

**¶18**        Wife timely requested findings of fact and conclusions of law on certain subjects.  Then, arguing the Decree contained insufficient findings, Wife requested additional findings when moving to alter or amend the Decree.  The court denied that request.

**¶19**        The Guidelines define a self-employed party's income as gross income minus "ordinary and necessary expenses" required to produce the income.  Spousal Maintenance Guidelines, § III(A)(1)(f); Child Support Guidelines, § II(A)(1)(e).  Additionally, a self-employed spouse's income includes expense reimbursements that "are significant and reduce personal living expenses."  Spousal Maintenance Guidelines, § III(A)(1)(g); Child Support Guidelines, § II(A)(1)(f) (same).  The Guidelines allow a court to "average fluctuating income over periods exceeding one year."

---

Order No. 2025-101.  Because Husband petitioned for dissolution before this date, the 2023 Spousal Maintenance Guidelines apply.

Spousal Maintenance Guidelines, § III(A)(1)(d); Child Support Guidelines, § II(A)(1)(d).

**¶20**       Wife is self-employed as an acupuncturist. The record included Wife's business and personal tax returns from 2021 through 2024, as well as business and personal banking and credit card records. Using those records, the superior court calculated Wife's income for 2021–2024.

**¶21**       To do so, the court considered Wife's "total income (or loss) minus repairs, rent, taxes/license, interest, and depreciation." The court started with gross receipts and deducted some, but not all, business expenses shown on the business tax returns. The court did not treat officer compensation (which went to Wife), salaries and wages, or "other deductions" as ordinary and necessary business expenses. Plus for 2024, the court added $45,722 in cash transfers out of the business back into Wife's income after it concluded these expenses were unnecessary. The court then averaged the resulting income over four years. The court found it "very difficult to determine" Wife's income because she "commingled" business and community funds and paid personal expenses from her business accounts.

**¶22**       Wife incorrectly asserts that the court's findings do not explain why it excluded the deduction for "cost of goods sold" on line two of the business tax returns. The court, by starting with "total income" deducted the cost of goods sold. Total income is calculated on the tax returns as gross receipts minus cost of goods sold. So the court deducted the cost of goods sold from the gross receipts.

**¶23**       Wife also claims the superior court did not sufficiently explain why it rejected the "other deductions" listed on line 19 of her tax returns. The evidence does not detail what the "other deductions" include beyond a general category of expenses (e.g., bank charges, legal and professional, medical supplies, and office expense). In fact, the 2021 return does not include even this general breakdown of "other deductions." The court rejected Wife's explanation that some of these expenses were for medical supplies because Wife listed those elsewhere for significantly less. Also, the court found Wife commingled her personal and business funds and paid personal expenses from business accounts. Given Wife's failure to adequately explain the "other expenses," the court's findings adequately explain why the court excluded the "other deductions" as an ordinary business expense.

¶24     Wife next argues the court erred by not deducting as necessary expenses employee wages listed on line 8 of her tax returns. For 2021, the court found Wife "did not include information as to how many employees worked there," but it did not expressly find she lacked employees or that their wages were an unnecessary expense. Wife presented uncontroverted testimony that she had one employee for all relevant years, and yet the court did not deduct expenses for employee wages. And the court did not provide adequate findings explaining why it did not deduct employee wages. If the court had reason to exclude those wages, Rule 82 required written findings explaining why.

¶25     Finally, the superior court erred in determining Wife's 2024 income. For 2024, the court found Wife's income, less ordinary and necessary expenses, was $146,594. The court then added $45,722 to that amount to account for cash Wife withdrew from the business account. So it found that her 2024 income was $192,316.

¶26     Wife claimed these withdrawals were for medical supplies she bought and resold to clients. The court rejected this explanation because Wife (1) failed to provide enough information about the supplies and (2) claimed only $1,002 as the cost of goods elsewhere on her 2024 tax return. The court, therefore, did not allow the deduction for medical supplies. Though the court properly found Wife failed to show a legitimate business reason for the cash withdrawals, it erred by adding them back into Wife's total income. The *total* business income presumably included the cash, and the court did not allow a deduction for the expenses Wife claimed to have spent the cash on, so adding the cash back to the total income improperly inflated Wife's income. By adding the disallowed expenses back to Wife's income, the court twice included them. This was error.

¶27     As Husband contends, self-employment income does not necessarily equate with ordinary business income shown on a party's tax returns. But the superior court started with Wife's gross receipts and then adjusted that amount based on certain business expenses. Doing so would ordinarily be proper, but the court's findings do not adequately explain its reasoning and the record does not support some of its findings. Given the request for written findings of fact and conclusions of law, we cannot determine why the court disregarded employee wage expenses and treated the 2024 cash transfer as income to arrive at its $200,000 annual income figure. So we vacate the spousal maintenance and child support orders and remand for reconsideration of Wife's income.

### B. Mortgage Principal

**¶28** To determine a spousal maintenance award, the superior court must apply the Spousal Guidelines. *See* A.R.S. § 25-319(B). The 2023 Spousal Guidelines require the court to enter the mortgage principal amount in the worksheet to determine the applicable range. *See* Spousal Maintenance Guidelines §§ I(D) (Step 3), IV.

**¶29** In issuing the temporary spousal maintenance order and the Decree, the superior court used a mortgage principal amount of $3,000 a month. But at trial, both Husband and Wife corrected that amount to $1,100. Husband concedes on appeal that the court should have used the agreed upon amount of $1,100, not $3,000. And he agrees that if the court had used the correct amount, the high point for spousal maintenance would have been $3,422.17. But he argues that vacating the spousal support order is not necessary because the error is immaterial as the award is still within the Spousal Guidelines range. He argues, without citation, that because the *average* monthly award over 36 months ($3,750 for first eighteen months, $2,750 for the next eighteen months, $3,250 average over thirty-six months) is within the Spousal Guidelines range, the award is fine.

**¶30** Wife responds that averaging the amounts is impermissible. She is correct. The Spousal Guidelines allow "step-down" awards— namely, awards that decrease over time, "if the *amounts* are within the amount range." Spousal Maintenance Guidelines § VI(E)(1) (emphasis added). We find no support for the notion that a decreasing spousal maintenance award works if the average monthly payment is within the range. The plain text of the Spousal Guidelines says both awards must fall within the range. *Id.* Here, the first half of the award exceeds the high end of the Guidelines range, so the error is material.

**¶31** Using the correct amount—$1,100 a month—the amount of spousal maintenance in the Decree exceeds the Spousal Guidelines range. So we vacate the spousal maintenance orders and remand for recalculation using the correct mortgage principal of $1,100 a month.

## II. Retroactive Modification of Temporary Support Orders

**¶32** Wife next argues the court erred by refusing to reassess its temporary support orders. She argues that, even without considering any errors the court made in calculating her income or in using an incorrect mortgage principal amount, the Decree's awards are significantly lower than those in the temporary orders, warranting a recalculation. She asks us to order that the court reassess its temporary orders. Husband argues Wife

"challenge[d] the Temporary Orders and was successful at trial" because "the child support and spousal maintenance" were considerably lower.

¶33        Wife asked the superior court to retroactively modify its temporary spousal maintenance and child support orders because they were based on inflated income.  The court denied this request.  It found the parties "had an opportunity to present evidence at the temporary orders hearing" and refused to allow "multiple opportunities to relitigate the same issues."  We review that decision for an abuse of discretion but review any legal interpretation de novo.  *Maximov v. Maximov,* 220 Ariz. 299, 300 ¶ 2 (App. 2009).

¶34        The superior court applied an incorrect standard when denying Wife's request for a retroactive modification.   The court has authority to modify a temporary support order.  A.R.S. § 25-316(D)(2) ("A temporary order [m]ay be revoked or modified before the final decree."); *accord Maximov,* 220 Ariz. at 301 ¶ 7.  Although the parties litigated at the temporary orders hearing how much support Wife should provide, temporary orders often result from "presentation of limited evidence at relatively brief hearings that occur before the parties have been able to engage in meaningful discovery."  *Phillips v. Schwartz,* 255 Ariz. 249, 253 ¶ 14 (App. 2023).  So a party may request retroactive modification at trial based on a full view of the relevant evidence.  *Id.;* A.R.S. § 25-316(D)(2).

¶35        To be sure, the court may find, after hearing the trial evidence, that a modification is unwarranted.  But here, the trial evidence showed that Wife's income was several thousand dollars less than that attributed to her for purposes of temporary support orders.  Beyond that, the error in setting the mortgage principal amount justifies a retroactive modification.  *See supra* ¶¶ 29–31.

¶36        We see no basis for denying outright Wife's request to retroactively modify the temporary support orders to reflect the income used in the Decree.  Certainly, the fact that the parties litigated temporary orders is not alone reason to deny Wife's request.  So we vacate the spousal maintenance and child support orders and direct the court to analyze whether to retroactively modify them to reflect accurately Wife's income and, as to spousal maintenance, the correct mortgage principal amount.

**III.    The Condo**

¶37        In a dissolution proceeding, the superior court must equitably divide community property. A.R.S. § 25-318(A).  Generally, an equitable division of property is one which is substantially equal.  *In re Marriage of*

*Flower*, 223 Ariz. 531, 535 ¶ 13 (App. 2010) (citation omitted).  We review the superior court's division of community property for abuse of discretion. *Id.* at ¶ 14.  The court abuses its discretion when the record lacks "'competent evidence to support the decision' or when the court commits an error of law in the process of reaching a discretionary conclusion." *Engstrom v. McCarthy*, 243 Ariz. 469, 471 ¶ 4 (App. 2018) (citation omitted).

¶**38**        Wife claims that Husband, Wife, and Husband's parents bought a condo as an investment property during the marriage.  If true, Husband and Wife's interest in the condo would presumptively be community property.  *See* A.R.S. § 25-211(A).  In fact, the court found that Wife did not later intend to gift her interest in the condo when she signed a warranty deed assigning her interest in the condo to Husband and his parents.  That finding is not disputed on appeal.

¶**39**        Despite assuming the community has an interest in the condo, the superior court did not determine the community's interest.  Instead, it awarded the entire community interest to Husband with no offset to Wife, finding Wife failed to show the community contributed any funds to the condo.  The record contradicts this finding.  To be sure, Husband's parents are listed on the mortgage, and evidence supports they made the down payment and paid closing costs.  But Husband and Wife both testified that the community paid the mortgage.  Husband's bank records confirm this.  And Wife testified there was about $136,405 in equity in the condo at the time of trial.

¶**40**        Regardless, the amount the community contributed is not dispositive if the court does not award an equitable lien.  *See* A.R.S. § 25-318(E)(1).  Rather, if the community owns an interest in the condo, it must be equitably allocated between the parties.  *See* A.R.S. § 25-318(A).  A community interest here would have some value because the undisputed evidence shows there was equity in the condo.  The court did not address this.  If the community does not own any interest in the condo, but Husband has a separate property interest, the court must determine whether the community is entitled to an equitable lien based on community funds used to pay the mortgage.  *See Saba v. Khoury*, 253 Ariz. 587, 590 ¶¶ 7–8 (2022).

¶**41**        Ultimately, though, it is unclear how Wife, Husband, and Husband's parents planned to split their interests in the condo.  The only evidence about this came from Wife, who testified that Husband's parents agreed to pay the closing costs, which they would get back when the condo sold.  Husband did not contradict or confirm this testimony, and Husband's parents did not testify.  The court acknowledged this gap in the evidence,

but that does not justify denying Wife *any* interest in the condo if the community did, in fact, make mortgage payments. Because the record does not support the court's finding that the community did not contribute any funds towards the condo, awarding any community interest to Husband with no offset or lien was not equitable.

**¶42** Moreover, the co-owners (Husband's parents) were not joined as parties and had no opportunity to assert, protect, or waive their interest in the condo. *See* A.R.S. § 25-314(D) (authorizing the court to join third parties when necessary). As we said in *Whitt v. Meza,* a third party, co-owner of property in which the community has an interest may be an indispensable party if their interest "is such that no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action." 257 Ariz. 176, 182–83 ¶ 20 (App. 2024).

**¶43** Because the record does not support awarding any and all of the community's interest in the condo solely to Husband with no offset, the superior court needs to determine what interest (if any) the parents have in the condo and whether Husband and Wife's interests (if any) are community or separate property. And if Husband and Wife's interests in the condo are separate property, whether the community is entitled to an equitable lien.

**¶44** As in *Whitt,* Husband's interest may not align with his parents' interest. *Id.* at 183 ¶ 22. The parties did not join the parents as parties, and the parents did not waive their right to participate, so they could not prove or defend their interest in the property. As Husband implicitly acknowledges, on remand Husband's parents must have an opportunity to assert their interest, waive it, or assign it to Husband. *Id.* (citing Ariz. R. Civ. P. 19(a)(1)(B)(i) (a person must be joined if disposing of their interest in their absence may "as a practical matter impair or impede the person's ability to protect the interest[.]")). Even if the court allocates the community's interest between Husband and Wife by awarding the entire community interest to Husband with an offset to Wife, joinder is likely necessary to avoid any risk that Husband's parents later claim an inconsistent interest. *Id.* at ¶ 24; *see also* Ariz. R. Civ. P. 19(a)(1)(B)(ii).

**¶45** We vacate the Decree awarding Husband the condo with no offset and remand for reconsideration. On remand, the superior court must determine what interest Husband, Wife, and the parents have in the condo. And it likely should join Husband's parents unless they waive or assign their interest to Husband. *See Whitt,* 257 Ariz. at 183 ¶ 25.

## IV.    Attorney Fees at Trial

¶46       The superior court awarded Husband $7,500 in attorney fees based on Wife's superior financial resources and unreasonable positions. We review that award for an abuse of discretion. *Magee v. Magee*, 206 Ariz. 589, 590 ¶ 6 (App. 2004).

¶47       The court found Wife took several unreasonable legal positions, including claiming an interest in the condo.  Having found that was not an unreasonable position and because we cannot know how much weight the court attributed to this factor, we vacate the fee award.  Plus, the court must reconsider Wife's income on remand, which may affect its attorney fees analysis.   We vacate the fee award and remand for reconsideration.

## ATTORNEY FEES ON APPEAL

¶48       Wife also requests attorney fees and costs on appeal under A.R.S. § 25-324, arguing Husband took unreasonable positions on appeal. Husband also requests fees and costs under A.R.S. § 25-324 and as a sanction under Arizona Rule of Civil Appellate Procedure 25.   After considering the parties' financial resources and the reasonableness of their positions on appeal, we decline to award fees to either party.  Nor does Wife's appeal warrant sanctions.  Rather, Wife is entitled to costs under A.R.S. § 12-342(A).

## CONCLUSION

¶49       We vacate the spousal maintenance and child support awards and remand for reconsideration of Wife's income and for the court to apply the correct mortgage principal amount in the spousal maintenance worksheet. We also vacate the orders (1) denying a retroactive modification of the support orders, (2) allocating any community interest in the condo entirely to Husband, and (3) awarding attorney fees to Husband.  We remand for proceedings consistent with this decision.

